UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-61542-Civ-COHN/Snow

STEPHEN McALLISTER and
THERESA McALLISTER,

     Plaintiffs,

vs.

THE LENDING HOUSE and TURNKEY TITLE,

     Defendants.

_____/



FILED by _____ D.C.
INTAKE

MAY 9 - 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • FT. LAUD.

## REPORT AND RECOMMENDATION

THIS CAUSE is before the undersigned on the Court's referral (Docket Entry 15) to United States Magistrate Judge Lurana S. Snow for a report and recommendation on the issue of plaintiffs' counsel's authority to settle the case, and, if the case is not settled, what action, if any, should be taken.

The order of referral required the plaintiff, Mr. Stephen McAllister, and his counsel of record, Ms. Rebecca Ann Taylor and Mr. Scott Salomon, to attend a hearing before the undersigned and to give evidence on the issue of counsel's authority to settle the case. The undersigned issued an Order to Appear, which required the appearance of those three individuals plus defendants' counsel, Mr. Stephen Orchard, to give testimony in this matter on May 3, 2007, at 1:30 p.m.[1] Mr. McAllister did not attend. Mr. Salomon

---

[1] The Order of Referral and the Order to Appear were sent electronically to Ms. Taylor, and were mailed to Mr. McAllister, Mr. Salomon and Mr. Orchard. None of the mailings were returned as undeliverable.

stated that he no longer represented Mr. McAllister in this matter. Ms. Taylor, who stated that she had tried unsuccessfully to reach Mr. McAllister by telephone and e-mail in the days before the hearing, informed the Court that she would file a motion to withdraw from the case owing to a conflict of interest as a result of the differences between Mr. Salomon and Mr. McAllister.

Mr. Salomon and Mr. Orchard, as officers of the Court, provided an explanation of the status of the various cases involving the McAllisters' efforts to avoid foreclosure on their home,[2] and the events which transpired in the instant case.

---

[2] Mr. Orchard stated that the mortgage between the defendant and the McAllisters, originated on April 13, 2005. The McAllisters made several payments, a partial payment, then no payments. Foreclosure proceedings were instituted in state court. The McAllisters, who were represented in that case by Charles David Franken, Esquire, did not assert as defenses any of the federal claims which were alleged in the instant lawsuit, which seeks to rescind the mortgage contract.

On March 6, 2006, a judgment of foreclosure was entered in favor of The Lending House and the sale date was set for April 26, 2006. Immediately before that date, Mr. Franken filed a Chapter 13 petition in bankruptcy on behalf on Mr. McAllister, Case No. 06-11544-BKC-RBR, which automatically stayed the foreclosure. However, other than preliminary plan, none of the required documents were filed and the case was dismissed in May 2006. Counsel stated that the dismissal automatically barred Mr. McAllister from filing another bankruptcy petition for 120 days.

The sale date was set for August 10, 2006. On that morning, Mrs. McAllister filed a petition for Chapter 13 bankruptcy, Case No. 06-13768-BKC-RBR, which again stayed the foreclosure sale. However, the case was dismissed after Ms. McAllister failed to file required documents. Thus Mrs. McAllister was barred from filing another bankruptcy petition for 120 days.

The foreclosure sale was set for October 12, 2006. The McAllisters caused the instant complaint to be filed on October 11, 2006, and were granted a temporary restraining order staying the foreclosure proceedings until October 20, 2006.

Apparently, a new January 2007 date was set for the foreclosure sale. On January 12, 2007, Mr. McAllister filed a pro

2

## I. PROCEDURAL HISTORY

Mr. Salomon stated that Mr. McAllister approached him to help stop the foreclosure on the McAllister's residence in a foreclosure sale set for October 12, 2006. On October 11, 2006, Mr. Salomon, who is not admitted to practice in the Southern District of Florida, and co-counsel Rebecca Ann Taylor, who is admitted to practice in the district, filed a complaint alleging violation of the Truth in Lending Act related to the mortgage between The Lending House and the McAllisters. The complaint sought recission of the mortgage contract and an injunction against the sale of the property by foreclosure. The plaintiffs also filed an emergency motion for a temporary restraining order staying the October 12, 2006, foreclosure sale. The Court granted the motion and stayed the foreclosure proceedings pending a hearing on a preliminary injunction against foreclosure, set for October 20, 2006. Mr. Salomon filed a motion to appear pro hac vice, which was granted.

---

se petition in bankruptcy, Case No. 07-10190-BKC-JKO, again staying the foreclosure. The case was dismissed for failure to file required documents. The foreclosure sale was then set for March 28, 2007. On March 27, Mr. Franken suggested settlement negotiations on the foreclosure action. Mr. Orchard refused, in light of Mr. McAllister's failure to sign the settlement agreement in the instant case. Instead, Mrs. McAllister filed a pro se bankruptcy petition, Case No. 07-12116-BKC-RBR, again staying the foreclosure sale. The case was dismissed for failure to file the required documents. Mrs. McAllister subsequently wrote to the Court asking for additional time to provide the documents. The case was reinstated for a 30-day period, which expired May 5, 2007. Mr. Salomon stated that subsequent to the settlement of this case, he learned that Mr. McAllister had been in three prior foreclosure actions with other lending institutions.

Mr. Salomon contacted the attorney for The Lending House, Mr. Stephen Orchard, and sought to negotiate a settlement of the instant case and the foreclosure proceedings.  Mr. Orchard stated that he required a notice of appearance from Mr. Salomon and a letter from Mr. Franken, who represented the McAllisters in the foreclosure, authorizing Mr. Salomon to negotiate for the McAllisters with The Lending House.  When both documents were produced, Mr. Orchard and Mr. Salomon entered into intensive negotiations which would settle the foreclosure, the bankruptcy cases and the instant case.  During these negotiations, the plaintiffs did not effect service of process on the defendants, and did not do so at any time prior to the voluntary dismissal of the case.

As evidence of these negotiations, Mr. Salomon subsequently produced (1) a copy of an October 12, 2006, e-mail from Mr. Salomon to Mr. McAllister which proposed terms for a settlement, which bears a notation purportedly signed by Mr. McAllister stating "OK to propose," (Exhibit A to this report and recommendation) and a copy of a Settlement Agreement dated October 26, 2006, signed by Steven Stoll, CEO of The Lending House (Exhibit B to this report and recommendation).  The settlement agreement reinstated the mortgage, added terms to make up for the deficiencies in past payments, included provisions stopping the state court foreclosure so long as there were no more defaults, and ended the bankruptcy proceedings.

4

On October 19, 2006, the day before the hearing on the preliminary injunction, Ms. Taylor faxed three letters to the Court: the first said the parties were settling the matter and agreed that the hearing was not necessary; the second said an agreement had not been reached and the hearing should proceed, and the third said that the hearing could be cancelled since the parties had settled the matter. (Exhibits C, D, an E to this report and recommendation) The parties did not appear for the October 20, 2006, hearing. No temporary injunction was entered, and the temporary restraining order expired.

Mr. Salomon informed the Court that during a telephone conversation he had with Mr. McAllister at the end of settlement negotiations, Mr. McAllister agreed that the matter was settled. Mr. McAllister came to Mr. Salomon's office to congratulate Mr. Salomon on the settlement of the case, "euphoric" that he would not have to move. However, when Mr. Salomon repeatedly contacted Mr. McAllister to come and sign the settlement agreement which had been signed by the defendant, Mr. McAllister failed to do so. Based on Mr. McAllister's signature on the October 12 e-mail and his subsequent conversations with Mr. McAllister, at some time Mr. Salomon turned over $23,000 in funds held in Mr. Salomon's trust account to the defendant, pursuant to the terms of the Settlement Agreement. On February 15, 2007, Mr. Salomon filed a notice of voluntary dismissal with prejudice. The case was dismissed on February 16, 2007.

5

On February 21, 2007, Mr. McAllister wrote to the Court stating that he had not authorized the settlement with The Lending House and had not authorized Mr. Salomon to settle the case. However, when ordered to appear and testify under oath about the assertions in his letter, Mr. McAllister chose not to appear before the Court. The defendant contends that this is part of the pattern of abusive behavior by the McAllisters to prevent the creditor from obtaining what it is due under the mortgage contract.

## II.   RECOMMENDATIONS OF LAW

State law governs the scope of an attorney's authority to enter into a settlement agreement.   Ford v. Citizens and Southern National Bank, 928 F.2d 1118, 1120 (11th Cir. 1992).   A party seeking to compel enforcement of a settlement agreement, or seeking to void a settlement agreement, must show that the attorney had, or did not have, "clear and unequivocal authority to enter into the settlement agreement."   Murchison v. Grand Cypress Hotel Corp., 13 F.3d 1483, 1485 (11th Cir. 1994).   Florida courts do not infer such authority from the attorney's good faith belief that he has the authority to settle the case, based on the conduct of the principal.   Dixie Operating Co. V. Exxon Company, U.S.A., 493 So.2d 61 (Fla. 1st DCA 1986).

Only one court has found the conduct of the principal sufficient to uphold a challenged settlement agreement.   In Murchison, the plaintiff challenged the settlement agreement negotiated by his attorney, and asked the court to void the

6

settlement. The Court found that Mr. Murchison authorized his attorney to negotiate on his behalf during a settlement conference before the court. When a settlement was reached, the court explained to the plaintiff that the terms of the settlement would be read into the record, binding the plaintiff. The settlement agreement was read into the record, and the plaintiff did not object to its terms. The court refused to void the agreement when the plaintiff later asserted that he did not agree to some of the terms.

In the instant case, the plaintiffs' attorney had a good faith belief that he had authority to settle the case, based on the plaintiff's conduct authorizing him, in a written notation on the e-mail, to engage in settlement negotiations. The attorney further believed that the plaintiffs had accepted the terms of the final settlement agreement, after Mr. McAllister congratulated him repeatedly for reaching the settlement. However, the plaintiffs subsequently failed to sign the settlement agreement, and after the case was dismissed, Mr. McAllister stated in writing to the Court that he had not authorized the settlement agreement in question.[3]

Because the plaintiff failed to attend the hearing to testify under oath about the negotiation and settlement process,

---

[3] The final settlement agreement included terms not found in the e-mail proposal, such as an additional payment of $5000 due on December 1, 2006. The final settlement agreement also changed other terms, such as setting a higher interest rate which increased the monthly payments on the principal by $500, and shortening the deadlines for paying the 2005 and 2006 property tax assessments.

the Court lacks clear and unequivocal evidence that Mr. Salomon was authorized to enter into the final settlement agreement. Indeed, Mr. Salomon did not sign the settlement agreement on behalf of the plaintiffs, but waited for them to sign it. The settlement agreement was not signed by the plaintiffs. Thus, unless the settlement agreement subsequently was ratified by the plaintiffs, it has no effect. Weitzman v. Bergman, 555 So.2d 448, 449 (Fla. 4th DCA 1990). There is no evidence that the plaintiffs subsequently ratified the agreement. They apparently failed to make the December 1, 2006, payments required by the settlement agreement, resulting in the setting of two more foreclosure sales, both of which were stayed by pro se bankruptcy petitions, which subsequently were dismissed. Accordingly, the Court should find that there was no valid settlement agreement between the parties.

Florida courts have considered in dicta the effect of a settlement agreement which subsequently is found by the court to be unauthorized. If the defendant would suffer irreparable injury owing to detrimental reliance on a settlement agreement repudiated by the plaintiff, the Court may consider the equities of the situation. Dixie, 492 So.2d at 63-64. However, the subsequent foreclosure proceedings by the defendant suggest that it did not suffer irreparable injury owing to detrimental reliance on the settlement agreement.

Another court stated in dicta that when a settlement is found to be unauthorized, a party "may [be] entitled to relief from

8

judgment so as to reinstate its dismissed action." <u>George v. Cigna Insurance Co.</u>, 691 So.2d 1209, 1212 n.4. In federal court, relief from judgment is governed by Fed.R.Civ.P. 60(b) which provides that "upon motion and upon such terms that are just, the court may relieve a party . . . from a final judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (4) the judgment is void; . . . or (6) any other reason justifying relief from the operation of the judgment." The motion must be filed within a year from the entry of the judgment, and the mere filing of the motion "does not affect the finality of the judgment or suspend its operation." <u>Id.</u> Accordingly, presently the Court does not have jurisdiction to affect any foreclosure proceedings currently underway.

The Court can either adopt or reject the findings contained herein regarding the settlement agreement. The plaintiffs may, if they choose, file a motion to vacate the judgment, which does not suspend the finality of the judgment or the operation of the judgment unless, after considering the briefing by the parties, the Court grants the motion to vacate the judgment.

### III. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Court find that there was no valid settlement agreement between the parties.

The parties will have ten days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by the Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 9th day of May, 2007.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

Mr. Stephen T. McAllister (P)
Rebecca Ann Taylor, Esq. (P)
Scott Alan Salomon, Esq. (P)
Stephen P. Orchard, Esq. (D)

10

## Scott A. Salomon, Esq.

**From:**    Scott A. Salomon, Esq. [scott@salomonlaw.com]
**Sent:**    Thursday, October 12, 2006 4:11 PM
**To:**    'Stephen P. Orchard'
**Cc:**    'Quixsend@aol.com'
**Subject:** RE: TLH v. McAllister - FOR SETTLEMENT PURPOSES ONLY

*OK to propose*

*X ✓ rel. ch*

I respect the fact that you had a miserable 13 months of litigation. I wish he came to me sooner. I always look to settle disputes instead of making them escalate. I am still of that mindset. I do not think that the BK was such a good idea as it only buys minimal time and settlement always works better.

Let me suggest this: Let me know what you think.

1. Mr. & Mrs. McAllister ("Borrowers") shall immediately remit $20,000.00 in certified funds or attorney trust account check to The Lending House ("Lender"); the undersigned certifies that he deposited said funds in his trust account through a cashier's check.
2. The Borrowers, Lender and each party's respective counsel shall reduce the terms of the agreement to writing which shall include a statement and description of all amounts due;
3. The $20,000.00 payment shall be credited in the following order:
   - Attorney's fees and costs, court costs, and publication costs.
   - Late fees
   - Interest
4. Lender shall apply the amount of $3,000.00 held in suspense to outstanding interest;
5. Borrowers shall pay to Lender on the first of each month the amount of $5,500.00, such amount to be applied by Lender as follows:
   - Regular Mortgage Payment under the original Note and Mortgage;
   - plus $2,500.00 towards the arrearage with the understanding that there is no waiver of default provisions and that upon default of any payment, and expiration of curative period, the default interest will accrue since the date of the settlement agreement. If there is no default, and until such time as there is a default, the interest payment will remain at 10.99 percent interest.
6. Borrowers shall pay 2005 real property taxes and provide a paid receipt to Lender on or before December 31, 2006;
7. Borrowers shall pay 2006 real property taxes and provide a paid receipt to Lender on or before April 30, 2007;
8. Borrowers, Lender and each party's respective counsel shall agree that the Note is reinstated; but the final state court judgment of foreclosure is not vacated, and the state court foreclosure action shall remain open and pending, subject to the terms herein;
9. Borrowers and Borrowers' counsel agree that Lender may unilaterally re-set the foreclosure sale upon the filing of an affidavit of non-compliance and seven days notice to Borrowers;
10. Borrowers shall waive all defenses and causes of action including dismissal with prejudice of the recently filed federal court action by Borrowers against Lender and TurnKey Title Corporation; and
11. Borrowers shall stipulate and agree that Borrowers, individually or jointly, shall not seek or file Chapter 7 and/or Chapter 13 bankruptcy protection with respect to this particular creditor or assigns and that they shall not have the ability to invoke any Automatic Stay and agree to waive same in the event that a future Petition is filed in Bankruptcy Court;

Please feel free to contact me with any questions or comments.

*Stephen P. Orchard*

*EXHIBIT A*

Stoll & Associates, Attorneys At Law
3696 North Federal Highway, Suite 300
Ft. Lauderdale, FL  33308
Phone (954) 745-3550
Facsimile (954) 745-3551

*This E-mail message is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information.  Accessing, copying, forwarding or re-using this e-mail or any information contained herein by any other person is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.*

## SETTLEMENT AGREEMENT

THE LENDING HOUSE, INC., a Florida corporation doing business as THE LENDING HOUSE (the "PLAINTIFF" or "LENDER"), and STEPHEN T. MCALLISTER, an individual, and THERESA M. MCALLISTER, an individual (collectively, the "DEFENDANTS" or "BORROWERS"), for good and valuable consideration paid in hand by each party, the receipt of which is acknowledged by PLAINTIFF and DEFENDANTS, hereby agree as follows:

WHEREAS, PLAINTIFF and DEFENDANTS agree to settle all claims asserted or could have been asserted with respect to the closing and funding of that certain $326,500.00 Balloon Mortgage Note dated April 13, 2005, payable to PLAINTIFF (the "Note") secured by that certain Mortgage dated April 13, 2005 (the "Mortgage"), entered into by DEFENDANTS, and PLAINTIFF on real estate located at 7445 NW 75th Drive, Parkland, FL 33067, legally described as Lot 7, Block B, of TERRAMAR ONE, according to the Plat thereof, as recorded in Plat Book 140, Page 30, of the Public Records of Broward County, Florida;

WHEREAS, PLAINTIFF and DEFENDANTS agree to settle all claims asserted or could have been asserted with respect to that certain case styled <u>The Lending House, Inc. v. Stephen T. McAllister, et al</u>, in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, Case No. 05-9772 (25) (the "State Court Foreclosure"), subject to DEFENDANTS' performance more fully expressed herein;

WHEREAS, PLAINTIFF and DEFENDANTS agree to settle all claims asserted or could have been asserted with respect to that certain case styled <u>In re: Stephen T. McAllister</u>, in the United States Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division, Case No. 06-11544-BKC-RBR, and that certain case styled <u>In re: Theresa Marie McAllister</u>, in the United States Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division, Case No. 06-13768-BKC-RBR (collectively, the "Dismissed Chapter 13 Cases"), subject to DEFENDANTS' performance more fully expressed herein;

WHEREAS, PLAINTIFF and DEFENDANTS agree to settle all claims asserted or could have been asserted with respect to that certain case styled <u>Stephen T. McAllister, et al v. The Lending House, Inc. and TurnKey Title</u>, in the United States District Court for the Southern District of Florida, Fort Lauderdale Division, Case No. 06-61542-CIV-COH (the "District Court Litigation"), subject to DEFENDANTS' performance more fully expressed herein;

IT IS THEREFORE AGREED THAT:

EXHIBIT B

1.     DEFENDANTS shall immediately remit Twenty Thousand Dollars and Zero Cents ($20,000.00) in certified funds or attorney trust account check to PLAINTIFF, receipt of which is hereby acknowledged by PLAINTIFF.

2.     PLAINTIFF holds DEFENDANTS' most recent payment in the amount of Three Thousand Dollars and Zero Cents ($3,000.00), and such amount shall be released from suspense and credited to DEFENDANTS' account in the manner hereinafter described.

3.     PLAINTIFF and DEFENDANTS approve and agree that the following amounts are due and payable pursuant to the Note and Mortgage, and pursuant to that certain Final Judgment of Mortgage Foreclosure in the State Court Foreclosure action dated March 10, 2006:

| | |
|---|---|
| Principal due on the Note and Mortgage: | $326,500.00 |
| Interest from 5/1/05-6/16/05: | $4,688.48 |
| Interest from 6/17/05-10/23/06: | $80,645.50 |
| Late Charges: | $598.53 |
| Attorneys' fees and costs (inc. court costs, title and publication): | $4,312.41 |
| TOTAL AMOUNT DUE (as of 10/23/06): | $416,744.92 |

4.     DEFENDANTS approve and agree that the foregoing amounts are fair and reasonable, and that the attorneys fees and costs to be collected and paid to Stoll & Associates, Plaintiffs law firm, are fair and reasonable in light of the length of litigation, the substance matter of the State Court Foreclosure, Dismissed Chapter 13 Cases, and the District Court Litigation.

5.     Twenty Three Thousand Dollars and Zero Cents shall be applied to DEFENDANTS' obligation outlined above as follows:

| | |
|---|---|
| Interest from 5/1/05-6/16/05: | $4,688.48 |
| Interest from 6/17/05-10/23/06: | $12,467.25 |
| Interest from 10/24/06-10/31/06: | $933.33 |
| Late Charges: | $598.53 |
| Attorneys' fees and costs (inc. court costs, title and publication): | $4,312.41 |
| TOTAL: | $23,000.00 |
| | |
| Interest Arrearage (as of 10/31/06) | $86,267.31 |
| Settlement Amount Funds applied to Interest Arrearage: | $18,089.06 |
| TOTAL INTEREST ARREARAGE (as of 11/01/06): | $68,178.25 |

*Lending House / McAllister Settlement Agreement*
- 2 -

6.    DEFENDANTS shall pay to PLAINTIFF consecutively monthly installments on the first of each month beginning on December 1, 2006 in the amount of Five Thousand Five Hundred Dollars and Zero Cents ($5,500.00) until such time as the accrued but unpaid interest arrearage is paid in full or DEFENDANTS' default, whichever event occurs first, such amount to be applied by PLAINTIFF as follows:

- PLAINTIFF shall apply Three Thousand Five Hundred Dollars and Zero Cents ($3,500.00) as a monthly installment of interest only at an adjusted default interest rate of 12.8637% on the outstanding principal balance of $326,500.00, commencing on December 1, 2006, and on the 1st day of each and every consecutive month thereafter so long as DEFENDANTS strictly comply with all terms and conditions of this Settlement Agreement; and

- PLAINTIFF shall apply the remaining Two Thousand Dollars and Zero Cents ($2,000.00) of each payment to DEFENDANTS' interest arrearage outlined in Paragraph 5 of this Settlement Agreement.

7.    Further, DEFENDANTS shall remit an additional Five Thousand Dollars and Zero Cents ($5,000.00) to be applied to and reduce the Total Interest Arrearage referenced in Paragraph 5 of this agreement, to PLAINTIFF with DEFENDANTS' installment due December 1, 2006, making the total amount due from DEFENDANTS to PLAINTIFF on December 1, 2006 Ten Thousand Five Hundred Dollars and Zero Cents ($10,500.00).

8.    DEFENDANTS understand, approve and agree that PLAINTIFF does not waive the default provisions of the Note and Mortgage and that upon default of any subsequent payment, and expiration of curative period, if any provided in the Note and Mortgage, default interest shall accrue at the default rate of 18% retroactive to October 23, 2006. If there is no default, and until such time as there is a default, the default interest shall be 12.8637% interest commencing October 23, 2006. All other terms and conditions of the Note and Mortgage remain in full effect.

9.    DEFENDANTS shall pay 2005 real property taxes for the above referenced property in full and provide a paid receipt to PLAINTIFF on or before November 30, 2006.

10.    DEFENDANTS shall pay 2006 real property taxes for the above referenced property in full and provide a paid receipt to PLAINTIFF on or before February 28, 2007.

11.    DEFENDANTS approve and agree that time is of the essence with regard to the foregoing payment of 2006 and 2007 real property taxes, and a failure to timely pay same and

provide a paid receipt to PLAINTIFF shall constitute a default of the terms and conditions of this Settlement Agreement.

12.     PLAINTIFF and DEFENDANT approve and agree that the Note is not reinstated; the Final Judgment of Mortgage Foreclosure in the State Court Foreclosure action dated March 10, 2006 is not vacated and DEFENDANTS shall take no steps to vacate same; and the State Court Foreclosure action shall remain open and pending, subject to the terms herein.

13.     PLAINTIFF and DEFENDANTS approve and agree that PLAINTIFF may unilaterally re-set the foreclosure sale upon the filing of an affidavit of non-compliance by DEFENDANTS with the terms and conditions of this Settlement Agreement upon the expiration of the applicable cure period, if any, provided in the Note and Mortgage.

14.     PLAINTIFF and DEFENDANTS approve and agree that time is of the essence with respect to all payments and obligations outlined and designated in this Settlement Agreement.

15.     DEFENDANTS hereby waive, release and remit all defenses and causes of action against PLAINTIFF, known or unknown as of the date of this Settlement Agreement, including, but not limited to, those defenses and causes of action asserted or could have been asserted with respect to the Note, Mortgage, State Court Foreclosure, Dismissed Chapter 13 Cases, and/or the District Court Litigation.

16.     DEFENDANTS shall immediately dismiss the District Court Litigation with prejudice as to Defendants, The Lending House, Inc., and TurnKey Title, and DEFENDANTS shall execute general releases in favor of such defendants.

17.     DEFENDANTS stipulate, approve and agree that DEFENDANTS, individually or jointly, shall not seek or file Chapter 7 and/or Chapter 13 bankruptcy protection with respect to this particular creditor or assigns and that they shall not have the ability to invoke any Automatic Stay and agree to waive same in the event that a future Petition is filed in Bankruptcy Court, and that the prejudice period for the filing of any bankruptcy petition in connection with the Dismissed Chapter 13 Cases shall be extended until such time as the interest arrearage is timely paid in full to PLAINTIFF in accordance with the terms and conditions of this Settlement Agreement.

18.     DEFENDANTS agree to bear their own attorneys' fees and costs incurred in connection with this dispute, and continue to pay the PLAINTIFF'S attorneys' fees and costs as set forth in the Note and Mortgage.

19.    The parties agree that no part of this Settlement Agreement shall be construed as an admission of wrongdoing or unfair dealing in any forum whatsoever.

20.    However, this Settlement Agreement may be filed with the court in support of PLAINTIFF'S affidavit of non-compliance, if necessary.

21.    This Settlement Agreement may not be modified in any manner whatsoever unless reduced to writing and signed by both parties.

22.    PLAINTIFF/LENDER shall include their heirs, legal representatives and assigns.

23.    DEFENDANTS/BORROWERS shall include their heirs, legal representatives and assigns.

24.    This Settlement Agreement may be executed in counterparts and exchanged via facsimile or other electronic means.

DATED: October 2 6, 2006

**The Lending House, Inc., a Florida corporation**

BY: _____
      **Steven M. Stoll, its CEO**

DATED: October _____, 2006

_____          _____
      **Stephen T. McAllister**                          **Theresa M. McAllister**

# SALOMON
## LAW CENTER

October 19, 2006

United States District Court
The Honorable Judge Cohn
Southern District of Florida
299 E. Broward Blvd.
Ft. Lauderdale, FL 33301

Re:    Stephen T. McAllister and Theresa M. McCallister, Plaintiffs, v.
The Lending House, Inc., a Florid Corporation, and Turnkey Title,
A Florida Corporation, Defendants
Case No. 06-61542 CIV-COHN

Dear Judge Cohn:

We apologize for the late hour at which you are receiving this letter, but the parties have reached a tentative settlement agreement such that the parties have agreed to cancel the hearing scheduled for tomorrow, October 20, 2006 at 10:00 a.m.

Counsel for The Lending House, Stephen Orchard, has indicated that he will sign a joint letter canceling the hearing for tomorrow. I will now attempt to have Mr. Orchard sign this same letter and fax same back to your Honor.

Respectfully submitted,

Rebecca A. Taylor, Esq.

_____
Stephen Orchard, Esq.

EXHIBIT C



# SALOMON
## LAW CENTER

October 19, 2006

United States District Court
The Honorable Judge Cohn
Southern District of Florida
299 E. Broward Blvd.
Ft. Lauderdale, FL 33301

Re:    Stephen T. McAllister and Theresa M. McCallister, Plaintiffs, v.
       The Lending House, Inc., a Florida Corporation, and Turnkey Title,
       A Florida Corporation, Defendants
       Case No. 06-61542 CIV-COHN

Dear Judge Cohn:

Please disregard the most recent letter faxed to your office canceling the hearing
for tomorrow. We were led to believe that the case had reached settlement, but we have
just now been informed by opposing counsel that they have no agreement as to any
settlement.

We will appear tomorrow before your Honor for the preliminary injunction
hearing at 10:00 a.m. We apologize that your Honor was not previously provided with a
memorandum of law on October 17, 2006, but at that point the other parties had led us to
believe that they were willing to settle the case.

Respectfully submitted,

Rebecca A. Taylor, Esq.

Cc: Stephen Orchard, Esq.

THE WALK AT UNIVERSITY DRIVE
2770 University Drive • Coral Springs, Florida 33065 • Phone 954.840.2100 • Fax 954.840.1818 • www.salomonlaw.com

EXHIBIT D

Rebecca A. Taylor
Salomon Law Center
2770 University Drive
Coral Springs, Florida 33065
Tel. (954) 840-2100
Fax (954) 840-1818

# Facsimile Transmittal

| To: | Phil<br>Clerk for Judge Cohn | **Fax:** | 954-769-5499 |
| --- | --- | --- | --- |
| **From:** | Rebecca Taylor, Esq. | **Date:** | October 19, 2006 |
| **Re:** | McAllister v. The Lending House, Inc.<br>CASE NO.: 06-61542 CIV-COHN | **Pages:** | 1 (including fax cover sheet) |
| **CC:** | Stephen Orchard, Esq. | | |

☐ Urgent     ☐ For Review     ☐ Please Comment     ☐ Please Reply     ☐ Please Recycle

Phil,

I apologize once again – the first letter I faxed to you of today's date, which cancels tomorrow's hearing based on settlement of the parties is back in effect. Please let the Judge know that the parties have settled and that there is no need for the hearing tomorrow. We will be filing our settlement agreement with the Court shortly.

Rebecca Taylor

EXHIBIT E